REVERSED AND DISMISSED.

---

EUGENE DELATOUR, APPELLEE, V. HUGO H. WENDT, APPELLANT.

FILED FEBRUARY 11, 1913.    No. 17,014.

1. **Taxation:** FORECLOSURE OF LIEN: PROCESS: NAMES. Defendant brought suit to foreclose a tax sale certificate upon lands standing of record in the true name of the owner, John E. Toumey. Service was attempted by publication. The petition named as defendant John E. "Townry," and the affidavit and published notice designated the defendant as John E. "Towrny." *Held,* That the notice was insufficient, and that the deed issued in such suit was void as against the owner, Toumey, and his grantees.

2. **Adverse Possession:** ENTRY: INTENT: EVIDENCE. Where one, claiming title to real estate by adverse possession, entered originally without color of title or claim of right, and the acts relied upon to show entry and occupation were consistent with a mere intention to trespass from time to time until interfered with by the true owner, his testimony that he intended to take possession and hold and occupy as owner, uncorroborated by acts necessarily indicating such intention, is not sufficient to require a finding in his favor. *Knight v. Denman,* 64 Neb. 814.

APPEAL from the district court for Deuel county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*Morning & Ledwith,* for appellant.

*Hoagland & Hoagland* and *L. O. Pfeiffer,* contra.

FAWCETT, J.

From a decree of the district court for Deuel county, quieting title in plaintiff to the south half of the northwest quarter and lots 3 and 4 in section 4-14-42, in that county, defendant appeals.

The pleadings and the evidence show substantially the following ·facts: One John E. Toumey entered the land as a homestead, and under date of May 21, 1889, was granted a patent therefor. The numerical index in the office of the county clerk shows that on July 1, 1889, Toumey, by the same name set out in his patent, executed a mortgage to the Davidson Investment Company, and on July 10, 1889, he, by the same name, executed another mortgage to one J. W. McMenamy. A copy of the investment company mortgage, introduced in evidence, shows it to have been executed under the name above set out. The copy of the mortgage to McMenamy gives the name of the mortgagor as John E. Tourney. That the true name was Toumey, as set out in the patent and in the numerical index, is not disputed. After obtaining his patent, Toumey, or some one for him, continued to pay the taxes upon the·land down to and including the year 1895, after which date the payment of taxes ceased. Some time after executing the mortgages referred to, the exact time not being shown, Toumey removed from the state of Nebraska to the state of Michigan, and in 1909 conveyed the lands by quitclaim deed to plaintiff. Defendant bases his claim for a reversal of the judgment below upon two grounds: (1) that he obtained title to the land under sheriff's deed in a suit instituted by him in 1903 to foreclose a tax lien under a tax sale certificate obtained by him on March 7, 1901; and (2) adverse possession.

In ·the tax foreclosure suit, relied upon by defendant, the defendants named were J. W. McNenanny, John E. Townry, Mrs. John E. Townry, and the Dandson Investment Company. The service was by publication. In the affidavit for such service the defendants are named as

John E. Towrny, Mrs. John E. Towrny, J. W. McNenanny and the Davidson Investment Company. The published notice gave the names as stated in the affidavit. The decree of foreclosure is entitled Hugó H. Wendt, Plaintiff, vs. J. W. McNenny et al., Defendants. It nowhere refers to any of the other defendants by name. The order of sale issued to the sheriff follows the same course, naming personally but one defendant, and naming him as J. W. McNenanny. The appraisal names only the defendant "McNenanny" and concludes with the recital: "The interest of.........defendant, we value at one hundred sixty dollars." The notice of sheriff's sale names only "McNenamny." The return of the order of sale makes no reference to any of the defendants by name except in the title of the case in the indorsement upon the return, which refers only to defendant "McNenamny." The order of confirmation refers only to defendant "McNenamny." Upon this record the district court properly found: "That in said tax foreclosure proceedings no service of summons of notice of the pendency of said action was had upon the owner of the record title thereof, to wit, John E. Toumey, and by reason of said fact said tax foreclosure proceedings were void, and conveyed no title to Wendt." It requires too great a stretch of the rule of *idem sonans* to hold that either "Townry" or "Towrny" is the same as Toumey.

Upon the second point, viz., the statute of limitations, the evidence shows that in the spring of 1893 defendant wrote to John E. Toumey in Michigan with a view to renting the land in controversy. Counsel for defendant in his brief states: "Receiving no reply, and learning that the land was mortgaged for all or more than it was worth, and that the taxes were unpaid, he concluded that Toumey had abandoned the land. Wendt thereupon, and on or about March 1, 1893, concluded to enter upon this land and take and retain adverse possession until he thereby acquired title, and possession was at that time taken by him for that purpose." It appears that before Toumey

15

left Nebraska he had broken up about ten acres of the land. In the summer of 1893 defendant raised a crop of wheat upon this ten acres, and in 1894 a crop of millet. No further attempt was made to cultivate the ten acres until about ten years later, nor did defendant offer to pay any of the taxes upon the land, which he says he learned in 1893 were unpaid, until March 7, 1901, when he called at the county treasurer's office and learned that the taxes for the years 1896 to 1899, inclusive, were delinquent, that the land had been offered at public tax sale, but not sold for want of bidders, and that it was then subject to private tax sale. He thereupon paid to the treasurer the delinquent taxes due, and the treasurer sold him the land at private tax sale, and executed to him a certificate of purchase therefor. He paid the subsequent taxes, and on June 16, 1903, commenced the suit to foreclose his tax lien, hereinbefore referred to. Defendant's contention now is that he had ten years of continuous and adverse possession at the time he brought his suit to foreclose his tax lien, and that his purpose in foreclosing the lien was to obtain a marketable title. It is not claimed that at the time he purchased the tax sale certificate he had had ten years' possesssion. If his purpose in foreclosing his tax lien after, as claimed, he had become the owner, by reason of ten years' adverse possession, was simply to secure a marketable title, it is hard to understand why, when he appears to have been compelled to pay $275 at the sheriff's sale, which was $90.48 in excess of the total amount due for taxes and costs of sale, he paid the amount of the surplus into court, and has never made any attempt to recover the same. If he was then the owner of the land, he was himself entitled to any surplus. The fact that he was the bidder at the sale is immaterial. If he were the owner of the property, and John Smith had purchased the land at the sheriff's sale, he, defendant, as the owner of the land, would have been entitled to the surplus, for, if he were the owner of the land, there could be no superior right in any one else. The fact, therefore, that he paid

the surplus into court, and has permitted it to there remain, indicates quite strongly that at that time he was not relying upon his title by adverse possession, but upon his title by purchase at that sale, and when he paid the surplus into court it must have been done in recognition of a superior title in Toumey.

But, be that as it may, the district court was right in finding against defendant generally, for the reason that the evidence does not sustain his claim of adverse possession. The record shows that at the time he claims to have entered upon the land he was an unmarried man living with his father upon an adjoining tract; that he had some cattle which were running with his father's stock; that in 1894 he entered a homestead about five miles distant which he occupied during the full period of five years to entitle him to a patent therefor; that during all of that time his stock continued to run with his father's, he going down occasionally to look after it. No attempt was made to fence the land until after he had obtained title, as he thought, under his tax foreclosure proceeding; so that during all of the ten years, when he claims he was holding the land adversely, it was open, grazing land, upon which there were neither buildings nor fences. He contends that during those ten years he sometimes cut hay upon the land; but the evidence shows that it was the custom of the residents of that section of the country to cut hay upon any of the wild and vacant land in that vicinity. He also claims that during those ten years he kept every one else from grazing cattle upon the land in controversy. Upon this point the evidence shows that there was a good deal of land in that neighborhood, some of which was owned by the railroad company and some by nonresidents, lying open; that by a sort of gentlemen's agreement among the residents these open lands were parceled out and each resident was expected to herd his cattle upon the land within his allotment. We think the evidence fairly shows that in telling others to keep their cattle off of this land defendant was doing so by virtue of this

neighborhood agreement, and not under any claim of ownership. Without pursuing the matter further, we think it clearly appears that defendant never took or held possession of this land during any time within the ten years referred to in any such manner as would start the statute of limitations running adversely to the owner thereof.

Finding no error in the record, the judgment of the district court is-

AFFIRMED.